SIGNS, INC. OF FLORIDA, Silas Enterprises, Inc. d/b/a Arrow Rent-a-Sign, Ace Sport Cycle, Inc. and Seymour Solomon d/b/a Speedy X-Press, Plaintiffs,

v.

**ORANGE COUNTY, FLORIDA,**
**Defendant.**

No. 83–233–Civ–Orl–17.

United States District Court,
M.D. Florida, Orlando Division.

April 21, 1983.

---

John B. Liebman, Christine K. Bilodeau, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Orlando, Fla., for plaintiffs.

John A. Gehrig, Asst. County Atty., Orlando, Fla., for defendant.

## MEMORANDUM OPINION

KOVACHEVICH, District Judge.

This cause involves the validity of certain legislation promulgated by the Board of County Commissioners of Orange County, Florida (the County). The legislation affects what has perhaps become the most popular medium of expression for numerous small businesses, as well as a valuable means of disseminating noncommercial speech by religious, civic and social organizations: the "portable sign".

A relatively new arrival to the world of advertising, a portable sign is defined by the County's resolution as:

"Any sign, of any material, with or without changeable type lettering, illuminated or non-illuminated, mounted or transported on a vehicle, trailer or similar structure, with or without wheels, and not permanently attached to the ground, often referred to as a 'trailer sign' ".[1]

The parties have stipulated that such signs "are the most cost-effective means for advertising available to a small business". Effective October 5, 1983, a county resolution will totally ban the use of portable signs throughout the unincorporated areas of Orange County.[2] In the interim period, another resolution places certain restrictions upon the use of portable signs.[3] Plaintiffs challenge both resolutions in this action.

Plaintiffs are two companies engaged in the portable sign business and two small businesses that utilize such portable signs.[4] Plaintiffs' Amended Complaint seeks declaratory and injunctive relief, asserting that the resolutions violate constitutionally protected rights. The resolutions are alleged to unreasonably discriminate against the Plaintiffs' businesses, deprive them of property rights without due process of law, violate their rights to freedom of speech

1. *Orange County Resolution No. 82–Z–15,* Section 1, amending Article XXII, Section 6, Subsection 5(a) of the Orange County Zoning Resolution, *Code of Laws for Orange County, Florida.*

2. *Orange County Resolution No. 82–Z–15,* Section 1, Paragraph 5(b), amending Article XXII, Section 6, Subparagraph 5(b), of the Orange County Zoning Resolution, *Code of Laws for Orange County, Florida.*

3. *Orange County Resolution No. 83–Z–01,* Section 1, amending Article XXII of the Orange County Zoning Resolution, *Code of Laws of Orange County, Florida,* as providing sign standards and specifications for portable signs as set forth in such Article at Section 3.4B 4.

4. Plaintiffs are Signs, Inc. of Florida, Silas Enterprises, Inc. d/b/a Arrow Rent-a-Sign (the sign businesses); Ace Sport Cycle, Inc. and Seymour Solomon d/b/a Speedy X-Press (the small businesses utilizing the signs).

and unreasonably impair their rights to contract.

The Court concludes, on the record before it, that the total ban resolution fails under First Amendment analysis. The interim resolution must also fall with the total ban. The Court's determination that freedom of speech guarantees are violated by the total ban makes unnecessary any discussion of the other alleged constitutional infirmities.

## I. THE TOTAL BAN

■ At the outset it is important to stress that the resolution banning the portable sign is a content-neutral prohibition. By entirely eliminating the particular medium of communication, the ban forecloses expression of both commercial and non-commercial free speech.[5] This aspect of the resolution distinguishes it from the billboard ordinance recently found unconstitutional by the four justice plurality opinion (Justices White, Stewart, Marshall and Powell) in *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). The Court need not concern itself here with any issues of distinction between commercial and non-commercial speech. The present case simply presents a content-neutral prohibition of a particular media of communication: the portable sign.[6]

As noted in Justice Brennan's concurring opinion in *Metromedia* (joined by Justice Blackman), the Supreme Court has formulated tests to be applied in analysis of content-neutral prohibitions of a particular media of communication. 101 S.Ct. at 2902. The Supreme Court's recent opinion in *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) is most illuminating on the method of judicial review involved here.

"[W]hen a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest. In *Schneider v. State*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939), for example, the Court recognized its obligation to assess the substantiality of the justification offered for a regulation that significantly impinged on freedom of speech:

'Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions. And so, as cases arise, the delicate and difficult task falls upon the courts to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of [First Amendment] rights.' 308 U.S. at 161, 60 S.Ct. at 150."

Similarly, in *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980), it was emphasized that the Court must not only assess the substantiality of the governmental interests

---

**5.** The Plaintiffs have standing to challenge the total ban as it relates to both commercial and non-commercial speech. The record before the Court reveals that the sign companies' users of the signs employ the signs for both commercial and non-commercial speech and that the small business plaintiffs here have used the signs for both purposes.

**6.** The Supreme Court has long recognized the uniqueness of each medium of expression and that such uniqueness requires each medium of expression to be assessed for First Amendment purposes by standards suited to it. See, *Metromedia, supra*, 101 S.Ct. at 2889 at Footnote 8. The parties have not cited, nor has the Court found, any other case dealing with a total ban on portable signs, without regard to their con-

tent. It is for this reason that the Court places significant reliance upon Justice Brennan's concurring opinion in *Metromedia*. Justice Brennan's concurring opinion treated the San Diego Billboard Ordinance as a total ban on such billboards. Since the ban on portable signs is a content-neutral prohibition, the Court finds that reliance upon *Central Hudson v. Public Service Comm,n*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1981) and the test set forth therein would be inappropriate. *Central Hudson* dealt with commercial speech restraints rather than a content-neutral restraint. The test which this Court chooses to apply, is in fact, the same test as set forth in *Central Hudson* with the exception that the first part of the *Central Hudson* test is eliminated.

asserted but also determine whether those interests could be served by means that would be less intrusive on activity protected by the First Amendment. 452 U.S. at 68–70, 101 S.Ct. 2182–2183, 68 L.Ed.2d 680–681.

■ To borrow from the proposed analysis of the billboard ordinance advanced by Justice Brennan in *Metromedia*, 453 U.S. at 528, 101 S.Ct. at 2903, 69 L.Ed.2d at 827, it appears to this Court that the County may totally ban portable signs "if it can show that a sufficiently substantial governmental interest is directly furthered by the total ban, and that any more narrowly drawn restriction, i.e., anything less than a total ban, would promote less well the achievement of that goal".

■ The County asserts two governmental interests sought to be furthered by the total ban; safety and aesthetics. Although both of these are well recognized as substantial governmental interests [7] the record before this Court does not adequately justify the resolution's substantial curtailment of free speech.

In respect to safety, the County's major concern was traffic (vehicular and pedestrian) safety. Although it may be a matter of common sense that portable signs, per se, cause distractions (their unabashed purpose) which could create real and substantial dangers, there is no substantial evidence before this Court that portable signs actually cause these effects. A precious right guaranteed by the Constitution should not be abridged without a showing by the governmental authority that the restriction is, in fact, well founded. In this regard, it is worth noting that the record offers no explanation as to how certain on-site permanent ground signs are any less hazardous to traffic safety than simi-

larly positioned portable signs. The County simply has not shown that its governmental interest in traffic safety is directly furthered by the total ban. Aside from the asserted justification for eliminating portable signs as traffic hazards, the County had not shown that traffic safety could not be satisfactorily accommodated by less restrictive means. The County's major complaint in this area appears to be that portable signs are often improperly positioned on the rights-of-way, in drive-ways, across sidewalks or in some other manner as to obstruct the vision of the driving public. These evils could be remedied by properly drawn and enforced restrictions on the use of portable signs. Rather than promulgating and enforcing such restrictions, the City has chosen the simpler route of totally banning these signs.

The record evidence before the Court reveal the County's limited resources available to enforce restrictions. Because of this economic reality, the County asserts that it just cannot effectively enforce restrictions. But the County has not established that enforcement, even with limited resources, cannot possibly be effective. For example, there is nothing to indicate enforcement could not include removal and impoundment of signs illegally placed on rights-of-way, or the imposition of stiff fines for violations. Tough enforcement, even if it only reached a few violators, would most likely cause other violators to come into compliance.[8] As voiced by more than one interested party at the hearings before the County, one does not close the highway simply because one cannot catch all the speeders. Here the County may not close this method of communication simply because it cannot control the violators, unless and until it shows that such action is

---

7. See, *Metromedia, supra,* 101 S.Ct. at 2892.

8. Enforcement provisions could be strengthened in numerous ways imaginable to this Court. Besides the noted impoundment and stiff fines, there does not appear to be any reason why the County could not formulate legislation which would place a heavy burden upon the Lessors of

the signs to ensure that restrictions were not abused. Further, repeated violations may well give rise to nuisance suits by the County against violators or, perhaps, Lessors of the signs for failure to supervise their Lessees under properly drawn restrictions.

the less restrictive method of curing the evil.[9]

The second governmental interest sought to be advanced by the County through the total ban is aesthetics. Aesthetic concerns, of course, are purely subjective and this Court cannot second guess the County on its evaluation of beauty. But merely because the County has determined a method of communication to be unattractive to the eye, it does not give the County carte blanche to eliminate the perceived eyesore.

Justice Brennan's approach in *Metromedia* is again helpful here in analyzing the total ban on aesthetic grounds. In addressing the San Diego ordinance (which Justice Brennan treated as a total ban) on billboards in light of that city's asserted interest in aesthetics, he noted:

I do not doubt that "[i]t is within the power of the [city] to determine that the community should be beautiful," *Berman v. Parker*, 348 U.S. 26, 33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954), but that power may not be exercised in contravention of the First Amendment. This Court noted in *Schad* that "[t]he [city] has presented no evidence, and it is not immediately apparent as a matter of experience, that live entertainment poses problems ... more significant than those associated with various permitted uses; nor does it appear that the [city] has arrived at a defensible conclusion that unusual problems are presented by live entertainment." *Schad v. Borough of Mt. Ephraim, supra,* 452 U.S. 73–74, 101 S.Ct. at 2185. Substitute the word "billboards" for the words "live entertainment", and that sentence would equally apply to this case. 453 U.S. 490, 101 S.Ct. at 2904, 69 L.Ed.2d 800 (1981).

In the present case, substitution of the words "portable signs" for the words "live entertainment" and the sentence quoted from *Schad* has equal force here when applied to the County.

The County has not established that a total elimination of portable signs will make any significant aesthetic improvement on many areas of the County. How will elimination of portable signs from industrial and commercial areas of the County already heavily populated with billboards and other permanent signs have more than an insignificant effect on the total appearance of such areas? The County has not suggested that elimination of the portable signs is but the first step in an effort to "clean up" the environment surrounding its' industrial and commercial areas. Without a showing of such a comprehensive effort to cure other environmental evils, the Court is hard pressed to accept the County's position on aesthetic improvement as sufficiently substantial to override First Amendment concerns.

Although the record is not entirely clear on this, it appears portable signs are primarily used in the commercial and industrial areas of the County. Thus, the effects of the ban will principally be felt in the commercial and industrial areas of the County. The record before the Court does not support a finding that the total ban directly furthers the announced interests of the County in aesthetics insofar as the commercial and industrial areas of the County are concerned.

Also requiring comment is the County's failure to establish exactly what it is about the portable signs that makes them any more obnoxious than permanent signs. Assuming that a portable sign otherwise qualifies under the County's restrictions, the record before the Court reveals that a portable sign may become a permanent sign with little alteration. Does the removal of the trailering device upon which the portable sign rests suddenly render it aestheti-

---

**9.** The County has asserted other safety hazards in relation to the signs. The County points to electrical hazards and the hazards which the signs would present in the event of severe weather, that is to say, the signs could be easily blown over. As to both of these, however, County clearly can enact restrictions to address these problems. Electrical codes for the portable signs could be developed and the County could require the signs to be anchored in a sufficient manner to ensure their stability. Both of these measures are far less drastic than a total ban of the signs.

cally acceptable in the County's eyes? Such a question of aesthetics is, of course, for the County to answer. But it is important in this analysis because an affirmative answer to the question reveals the existence of alternative means of achieving the County's goals. If the County can compel reasonable alterations of the portable signs to cause their appearance to be acceptable, then they have available a means of bringing about the desiring aesthetic result far less drastic than a total ban. The County has not established that such less drastic means are unavailable or unsatisfactory to achieve either goal and in the absence of such proof, this elimination of an entire medium of communication cannot stand.

· In summary, the County's total ban on portable signs, while directed towards ligitimate governmental interest, has not been established as directly furthering those interests in some aspects, nor has it been established that those interests could not be promoted by more narrowly drawn restrictions. Accordingly, the Court finds the total ban to be an unconstitutional infringement upon Plaintiffs' First Amendment rights of free speech.

## II. THE INTERIM RESOLUTION

■ The interim resolution was expressly enacted to give parties, such as the Plaintiffs, lead time to take appropriate measures to lessen or avoid conceivably harsh economic effects of the total ban. The County has termed the interim resolution a "favor" to those adversely affected rather than an "imposition". In light of the County's avowed purpose in enacting the interim resolution, it is rendered nugatory by this Court's declaration that the total ban is unconstitutional.[10]

10. The County would be hard pressed to argue, after their characterization of the interim ordinance as a favor, that the interim ordinance could stand on its own in spite of the Court's finding that the total ban is unconstitutional.

11. This Court's judgment shall be limited to the total ban and the interim ordinance. Plaintiff's Amended Complaint raised questions relating to

In light of the foregoing, an appropriate declaratory judgment shall be entered in favor of Plaintiffs and against Defendant.[11]

other provisions of the recently enacted comprehensive sign ordinance which this Court finds to be without merit. Specifically, this Court's Order and Judgment does not affect the provisions of the comprehensive sign ordinance dealing with flashing lights, beacon lights, etc. (Section 2.3h) nor with the provisions dealing with political campaign signs or posters (Section 3.5.1).