**ALL AMERICAN SIGN RENTALS, INC., Gary L. Hoenig d/b/a Aaction Rent-A-Sign, Cary Orizonda d/b/a Cary-A-Sign, Jack Yoder d/b/a Jayco Signs, Signs Inc. of Florida, Silas Enterprises, Inc. d/b/a Arrow Rent-A-Sign, Colonial Auto Air, Inc. d/b/a Ice Cold Auto Air and Sager Enterprises Incorporated d/b/a Arnie Sager, Plaintiffs,**

v.

**CITY OF ORLANDO, Defendant.**

**No. 83–781–ORL–CIV–17.**

United States District Court, M.D. Florida, Orlando Division.

Oct. 27, 1983.

John B. Liebman, Linda F. Wells, Christian K. Bilodeau, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Orlando, Fla., for plaintiffs.

Robert D. Guthrie Asst. City Atty., Orlando, Fla., for defendant.

## MEMORANDUM OPINION

KOVACHEVICH, District Judge.

This cause involves the constitutionality of the City of Orlando Ordinance providing for distance requirements and providing for time on and off premises as set forth in Section 58.145(1)(B)(5), City Code of the City of Orlando, as amended by the Ordinance dated September 26, 1983, for the regulation of portable trailer signs.

Jurisdiction for this action is pursuant to 28 U.S.C. § 1331, based on Plaintiff's challenges of Section 58.145(1)(B)(5) of the City Code, amended, as depriving the Plaintiffs of their Constitutional rights as protected under the First and Fourteenth Amendment guarantees of commercial speech. The Plaintiffs have standing to sue.

As this Court stated in its Memorandum Opinion of April 21, 1983, in the case of *Signs v. Orange County*, 592 F.Supp. 693 this "legislation affects what has perhaps become the most popular medium of expression for numerous small businesses as well as a valuable means of disseminating non-commercial speech by religious, civic, and social organizations: 'the portable sign'". In this instant action, Section 58.144–1(9)(u) defines a trailer sign as "any sign mounted on a vehicle normally licensed by the State of Florida as a trailer and used for advertising or promotional purposes". The regulations at issue are contained in Section 58.145(1)(B)(5) of the City Code of the City of Orlando as amended by the Ordinance dated September 26, 1983.

Effective October 6, 1983, Section 58.-145(1)(B)5.(a) of the Code of the City of Orlando provides that a permit for a trailer sign shall not be valid for a period longer than forty (45) days after which time the trailer sign shall be removed from the business site; a permit shall not be renewed nor shall a permit be obtained for the same business site within a period of seventy-five (75) days after the removal of a trailer sign from the business site; and no business site eligible under this section shall be permitted to display a trailer sign more than one hundred thirty-five (135) days during any twelve (12) month period. In addition, the Plaintiffs are challenging the constitutionality of Section 58.145(1)(B)5.(f) providing "a maximum of one trailer sign per business location with a minimum spacing of four hundred (400) feet between any two (2) trailer signs on the same side of the road".

## STATEMENT OF THE CASE

The Plaintiffs filed their Complaint and a Petition for Temporary Restraining Order October 3, 1983. The Plaintiffs requested a Temporary Restraining Order to restrain enforcement of Section 58.145(1)(B)5(a), as amended, until this Court rules on the merits of the complaint. This Court heard argument on the Petition for Temporary Restraining Order on October 4, 1983, and ruled it would enter the Order October 6, 1983, the effective date of the challenged amendment. At the Temporary Restraining Order hearing, the parties agreed that a final hearing on the merits would be held October 6, 1983.

On October 5, 1983, the City of Orlando moved for continuance of the October 6th hearing on the ground that the City Commissioner, Pat Schwartz, would be unavailable to testify on October 6th. In light of this Court's calendar demands, all parties agreed, and this Court ordered, that Commissioner Schwartz's testimony could be taken by deposition subsequent to the Octo-

ber 6th trial and such deposition testimony would be considered part of the trial testimony.

On October 6th, this Court entered a Temporary Restraining Order effective through November 7, 1983, heard testimony and received evidence relevant to the complaint.

At the request of the City of Orlando, and as previously agreed to, this Court ordered that the record remain open through October 18, 1983, for further testimony via depositions of City Commissioner Pat Schwartz, Arnold Sager and Jack Yoder.

On October 6, 1983, this Court heard all testimony pertaining to the Plaintiff's request for declaratory judgment and injunctive relief. At the Court's request, memoranda were submitted by the parties October 11, 1983 and were supplemented by memoranda October 21, 1983.

This Court, having heard all testimony in this case and having reviewed thoroughly all memoranda in support and opposition, finds the following.

## BACKGROUND

The City of Orlando is a Florida municipal corporation. As such, the City has the power and obligation to plan and zone the territory within the city pursuant to Parts II and III of Chapter 163 Florida Statutes. This is a power conferred pursuant to the State's police powers to be exercised for the health, safety and welfare of the citizens of the City. Fla.Stat. § 163.3201 mandates that certain regulations be included within the land development regulations of the local government. Zoning ordinances are such land development regulations. In addition, ordinances relating to signs are traditionally considered as a regulation affecting the land since signs are used either accessory to another use or as a primary use of a piece of land.

The City of Orlando has sign regulations dealing with all types of signs. The city regulations are part of a comprehensive approach to such regulation by addressing standards for all types of signs. Trailer signs are regulated as either allowed or excess signage in two (2) ways. First, trailer signs are regulated as part of the allowed signage a business site may have in the overall calculation of the amount of sign area surfaced. Secondly, trailer signs are addressed as permitted, excess signage subject to spacing from other excess trailer signage and time on and time off the business site.

## PURPOSE OF CHAPTER 58

The purpose of Chapter 58 is delineated in Section 58.02.

In their interpretation and application, the provisions of Chapter 58 of this Code shall be the minimum requirements to promote the public health, safety, comfort, good order, appearance, morals and general welfare; to conserve the taxable value of land and buildings and to protect the character and maintain the stability of residential, business and industrial areas within the city and to promote the orderly and beneficial development of such areas. Among other purposes, such areas are intended to provide adequate light, air, privacy and convenience of access to property; to avoid undue concentration of population by regulating and limiting the height and bulk of building; the size and open spaces surrounding building; to establish building lines; to divide the City into districts restricting and regulating therein the construction, reconstruction, alteration and use of buildings, structures and land for residents, business, industrial and other specified uses and to limit congestion in the public streets by providing off-street parking of motor vehicles and to define the powers and duties of the administrative officers and Board of Zoning Adjustment as provided herein.

Furthermore, Article XIX. Sign Regulations Section 58.144 defines the purpose to:

Promote the public health, safety and general welfare, and to protect the character of residential, business and industrial areas throughout the city.

It is intended that signs placed on land or on a building for the purpose of identification or for advertising a use conducted thereon or therein shall be deemed to be accessory and incidental to subject land building or use. With respect to signs advertising business uses, it is specifically intended among other things, to avoid excessive competition and clutter among sign displays in the demand for public attention. Therefore, the display of signs should be appropriate to the land, building or use to which they are appurtenant and be adequate, but not excessive, for the intended purpose of identification or advertising.

Therefore, the stated purposes for the regulations of signs in the City of Orlando are to promote public health safety and general welfare and to protect the character of residential, business and industrial areas throughout the City.

## CITY CODE HISTORY

In 1974, the City of Orlando adopted regulations providing for trailer signs as permitted excess signage. Subsequently, regulations were adopted in October 1980, regulating the anchoring, set-back, corner set-back, prohibited lighting, four hundred (400) foot set-back and permitted time on premises and required time off premises. In 1980, the regulations provided for sixty (60) days on site and a mandatory thirty (30) days off. September 26, 1983, the City Council amended the regulations dealing with trailer signs. The amended regulations provided for forty-five (45) days for using the sign and a required seventy-five (75) days off the premises with a one hundred thirty-five (135) maximum use per year by any one business. The four hundred (400) foot separation requirement remained unchanged from the 1980 ordinance. It is the four hundred (400) foot separation requirement and the on-off requirements of forty-five (45) and seventy-five (75) day requirements that are challenged in this action.

## COURT'S APPLICATION OF THE METROMEDIA/SCHAD TESTS

In *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), a four part test was adopted for determining the validity of government restrictions on commercial speech. The *Metromedia* test provides that: "(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) advances that interest and (4) reaches no further than necessary to accomplish the given objective". *Id.* at 507, 101 S.Ct. at 2892. See also *Central Hudson Gas v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), and *Dills v. City of Marietta, Georgia*, 674 F.2d 1377 (11th Cir.1982). However, this Court has found "reliance upon *Central Hudson* .... and the tests set forth therein is inappropriate in evaluating regulations restricting trailer signs because *Central Hudson* dealt with commercial speech restraints rather than a content-neutral restraint". This Court has noted previously that the *Schad* test is the same as that set forth in *Central Hudson* "with the exception that the first part of the *Central Hudson* test is eliminated". *Signs Inc., et. al., v. Orange County* at 695 n. 6. The parties have stipulated that the commercial speech involved in this action concerns lawful activity and is not misleading. And, both parties agree that public welfare, safety and aesthetics are substantial governmental goals. In addition, the safety requirements of this code are not challenged. The issues in this instant action pertain to Parts 2, 3, and 4 of the *Metromedia* test, and/or the *Schad* test as applied to the on-off and spacing requirements of the Code.

▇ It is this Court's opinion that the City has not met this four part test. In particular; (1) no evidence was introduced to justify the regulation in the face of its obvious restriction on the freedom of

speech. Specifically, all the witnesses for the city agreed that the distance requirement and the on-off requirement had no beneficial effect for public safety purposes or for aesthetic and beautification purposes. (2) The city acknowledged that the existing regulations make the use of these signs safe within the City of Orlando and the City's current inspection practices insure that the signs are used properly and safely. (3) The City's actual evidence presented on October 6, 1983, did not contain any rationalization or explanation for the City's legislative act requiring the forty-five (45) and seventy-five (75) versus the sixty (60) and thirty (30) days on-off requirements. (4) No evidence was presented to support a requirement for the four hundred (400) foot separation between portable trailer signs when the evidence clearly establishes that the City requires only a forty (40) foot separation between permanent signs. (5) In that the signs conform with the City's existing regulations concerning permanent signs when mounted on a pole rather than a temporary trailer, it is difficult to see how these signs interfere with the aesthetics of the community any more than any other sign. (6) The evidence presented in this case establishes that the signs are in fact both extremely effective as a medium of expression and inexpensive to use. (7) These portable trailer signs are particularly beneficial to political candidates and religious and social organizations that wish to advertise during a portion of the year but not on a full time basis nor on a full time basis so as to justify permanent signs. Businessmen testified that they received significant business benefits from these signs. (8) The city failed to present any evidence whatsoever to refute these beneficial aspects or to justify the City's desire to place limitations on the usage of these signs.

The City states that the portable trailer signs are but a single part of a comprehensive set of regulations insuring public safety and the character of the community (aesthetics). The public safety requirements of the regulations are not challenged in this instant action nor are the codes goals of public health, safety, and welfare or aesthetics challenged. It is that aspect of Chapter 58 of the Comprehensive Plan that "singles out" portable signs disadvantageously and unreasonably, arbitrarily and capriciously limits their use under the pretext of safety and aesthetics, while at the same time allowing billboards to be placed within two hundred (200) feet of one another and permanent signs to be placed within forty (40) feet of one another. The evidence fails to show that this arbitrary, capricious and unreasonable limiting of portable signs implements a substantial governmental interest, advances that interest or reaches no further than necessary to accomplish the given objective. *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). It simply "singles out" portable signs regulating the on-off and separation requirements under the pretext of promoting the goals of health, welfare, safety and aesthetics of the community.

In the light of the foregoing, a permanent injunction is entered in favor of the Plaintiffs prohibiting the enforcement of the on-off and space limitations of Section 58.145(B)(5), City Code of the City of Orlando as amended by the ordinance dated September 26, 1983, for the regulation of portable trailer signs, as to separation and on-off requirements. Also, a declaratory judgment is entered in favor of the Plaintiffs declaring these specific Sections of the City Code of the City of Orlando to be unconstitutional.