Donald **HARNISH** d/b/a ADS of
Florida, et. al., Plaintiffs,

v.

**MANATEE COUNTY,
FLORIDA,** Defendants.

No. 83–1554–Civ–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

March 30, 1984.

James R. Betts, of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, Fla., for plaintiffs.

Ralph Artigliere, Lakeland, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER

KOVACHEVICH, District Judge.

This cause involves the Manatee County sign ordinance, Ordinance 81–23. On February 10, 1983, the County Commission of Manatee County, Florida amended Ordinance 81–23; the amended ordinance is Ordinance 82–24. Section B3d explicitly *prohibits* the *erection* or *display* of *any portable* or *changeable-copy temporary* sign in Manatee County.

Portable signs are defined in the ordinance at Section D2 as:

> Any sign which is manifestly designed to be transported, including by trailer or on its own wheels, even though the wheels of such sign may be removed and the remaining chasis or support constructed without wheels is converted to an A or T frame sign or attached temporarily or permanently to the ground since this characteristic is based on the design of such a sign.

A changeable copy sign is defined in the ordinance at Section D2 as:

> An integral part of a sign not covering more than 65% of the total sign area and design so as to readily allow the changing of its message by removable letters, panels, posters, etc. Unless otherwise specifically provided, all signs permitted by this Ordinance may also be changeable copy signs.

The ordinance imposes severe restrictions on the use of temporary signs (defined in the ordinance at Section D2) as:

> any sign designed to be temporarily erected or displayed. This includes the following (a) paper or cardboard signs, A or T frame signs, sandwich board signs, portable signs and sidewalk signs; and (b) any sign which announces any temporary activity such as real estate promo-

tions, commercial promotions, political campaigns, garage sales, fund raising events, grand openings and similar activities.

The ordinance at Section B3A limits the use of temporary signs to three circumstances:

(1) *Grand opening signs.* On-site signs announcing the grand opening of a premise or establishment.

(2) *Signs pending placement of permanent signs.* On-site signs erected and displayed pending the placement of permitted permanent signs.

(3) *Other signs.* Other on-site signs approved by resolution of the Board of County Commissioners.

In Section B3b temporary signs are regulated as follows:

Maximum number of signs: one per premises. Maximum permit duration: one month. Maximum permit frequency: one per calendar year. Maximum area: thirty-two square feet.

The sign ordinance was passed following a series of public meetings during which the County Commission was afforded an opportunity to hear their constituents express a general dislike for portable signs. The primary complaint seemed to be that the portable signs are inherently ugly and there were many of them in Manatee County.

The record in this case, as established through the use of depositions and photos, tends to support the statements made by citizens at hearings before the Commission. The individuals deposed were unanimous in their belief that temporary signs are inherently ugly, dangerous because they are placed in areas which tend to impede the safe movement of traffic, and are often wired, thus creating a potential electrical hazzard. From an aesthetic point of view, the depositions taken were unanimous in stating that portable signs create a visually polluted environment.

Before this Ordinance, portable signs were being used in Manatee County for religious, social, and political messages.

Such expressions are afforded the highest degree of protection by the First Amendment to the United States Constitution. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). Portable signs were being used for commercial advertising purposes as well.

In *Metromedia,* the United States Supreme Court struck down a municipal ordinance that permitted on-site commercial advertising but forbade all other billboard advertising, including on-site non-commercial advertising. The Court applied the following four part test originally set forth in *Central Hudson Gas v. Public Service Commission of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) in determining the validity of government restrictions on commercial speech:

(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it

(2) seeks to implement a substantial government interest,

(3) directly advances that interest, and

(4) reaches no further than necessary to accomplish the given objective.

The first requirement of the *Central Hudson* test is that commercial speech is protected by the First Amendment only if that speech concerns lawful activity and is not misleading. In *Signs, Inc. of Florida v. Orange County, Florida,* 592 F.Supp. 693 (M.D.Fla.1983), this Court held that bans on portable signs are content-neutral bans and thus the first requirement under the *Central Hudson* test need not be addressed. There has been no assertion by defendant that portable signs promote unlawful activity or are misleading; therefore, the first requirement of the *Central Hudson* test is satisfied.

The second requirement of the *Central Hudson* test is that any restriction on otherwise protected commercial speech is valid only if it seeks to implement a substantial

government interest. The purpose of the Ordinance is stated in Section A1:

> Whereas increased numbers and size of signs, as well as certain types of signs and lighting can distract the attention of motorists and pedestrians and constitute hazards to traffic safety, interfere with emergency access for firefighting and other purposes, interfere with pedestrian and vehicular circulation, create hazards and electrical shock and injury or damage from wind-blown structures, impair visual orientation to the environment and the effectiveness of public safety and other necessary signs;
>
> whereas effectively designed and located signs can enhance visual orientation and safe traffic movement and can contribute significantly to the appearance and attractiveness of commercial, industrial, and other activities and the vitality of the local community.
>
> It is, therefore, the purpose of this ordinance to regulate the use of signs within the county in order to protect and promote the public health, safety, and general welfare.
>
> It is also the intent of this ordinance to supplement and act in conjunction with the Manatee County Zoning and Land Development Code, the Manatee County Comprehensive Plan and other local, state, and federal regulations to carry out these purposes.

In *Metromedia* the Supreme Court recognized and acknowledged that traffic safety and aesthetics may constitute substantial governmental interests. There can be no argument that public health, safety, and general welfare are substantial governmental interests. Thus, the second requirement of the *Central Hudson* test is met.

The third requirement of the *Central Hudson* test is that the restriction on otherwise protected commercial speech is valid only if the restriction directly advances the substantial governmental interests indicated in the second part of the *Central Hudson* test.

The question is whether the Manatee County regulations directly advance the County's interest in aesthetics and safety.

This Court recently dealt with a sign ordinance promulgated by Orlando, Florida, which limited the time periods during which portable signs could be displayed. In *All American Sign Rentals, Inc., et. al., v. City of Orlando*, Case No. 83–871–CIV–ORL–17, 592 F.Supp. 85 (M.D.Fla. 1983), this Court found unconstitutional an ordinance which allowed the display of portable signs for no longer than forty-five days. There was a finding in *All American* that the "on-off requirement had no beneficial effect for public safety purposes or for aesthetic and beautification purposes".

Manatee County has obviously gone one step further as the County has totally banned the use of portable signs. Manatee is not placed in the position of arguing that portable signs are an aesthetic detriment and safety hazard, while their ordinance allows portable signs for limited periods of time as in *All American*. A review of the record indicates that the ban on portable signs has had a direct and substantial effect in ameliorating problems in which the County has a substantial interest. Witnesses indicated the county has improved aesthetically since the Ordinance banned portable signs.

In previous cases, this Court has had to review the constitutionality of portable sign ordinances, and the parties have placed evidence before the Court indicating the economic impact of portable signs or ordinances governing the use of portable signs on the local economy. *All American* supra, at 88–89; *Signs, Inc.* supra, at 694–695.

In the instant case there was no evidence except testimony by an economist, regarding the economic impact, and, who would bear that impact under this Ordinance. This is strange because the Ordinance *does* address the economy of Manatee County:

> whereas effectively designed and located signs can enhance ... contribute significantly to ... commercial, industrial ...

vitality of the local community. See Ordinance 81–23, Section A: Purpose and Intent, Page 1.

In *Signs, Inc.* supra, at 694, the Court described portable signs as the most popular medium of expression of numerous small businesses, as well as a valuable means of disseminating non-commercial speech by religious, civic and social organizations. Parties have previously stipulated that portable signs are the most cost-effective means of advertising available to a small business. *Signs, Inc.* supra at 694.

Here, however, the parties have not addressed the economic burden of this Ordinance on small businesses. This is truly unfortunate because: (1) Undoubtedly there has been an impact, given the economic efficiency of portable signs and the limited number of alternatives for many potential portable sign users, and, (2) A purported purpose of the Ordinance is to facilitate commercial and industrial vitality in Manatee County.

Among the evidence presented by Defendant is a list of portable sign rental customers; the first page has such diverse organizations as Asia Restaurant, Beiter Batteries, Bud's Blossom Flower Shop, D'Anca's Hair Stylist, Fantasia Organ Center, and Girl Scout Troop 330. A review of the entire list reveals numerous small businesses of every description, churches, and service organizations. Many of the users were repeat customers. Obviously, the users found the signs to be economically effective devices. One cannot help but wonder if this Ordinance has enhanced the "vitality" of the community of businesses, and organizations listed.

No ordinance can be expected to achieve total perfection in its results. Numerous statutes have been on the books in Florida for decades and still violations of those occur daily. In fact, the criminal statutes of the State are a classic example of an area in which the state has a tremendous interest in insuring public safety and many of those criminal statutes provide for substantial periods of incarceration; yet, one cannot pick up the newspaper without reading about another violator. Given the facts *before* the Court in *this* case, the Court finds the Manatee ordinance has met the third requirement of the *Central Hudson* test.

The final requirement of *Central Hudson* is that the ordinance reach no further than necessary to accomplish its goals. Unquestionably, a total ban as is evidenced in the Manatee County ordinance is the most drastic approach to protect any governmental interest. *Central Hudson* requires that the ordinance reach *no further* than necessary to accomplish the given objective.

Manatee County found regulation of portable signs difficult, and enforcement of their regulations prior to the total ban ordinance, to be cumbersome. The portable nature of the sign plus the manner of its use created Manatee County's enforcement difficulties.

There is no indication from the evidence submitted in this case that substantial setback regulations, coupled with strict electrical hook-up requirements, would not alleviate the primary safety and aesthetic considerations of Manatee County.

Manatee would be well within its rights to require that all portable signs only be displayed a minimum of a specific number of feet from any road. Manatee County could also provide for mandatory minimum standards of electrical hook-up for the signs. Additionally, the County could provide that the signs be anchored to a particular standard to prevent their movement during violent weather. The County could put teeth in an ordinance regulating portable signs. As this Court said in *Signs, Inc.* supra, at 696:

> ... there is nothing to indicate enforcement could not include removal and impoundment of signs illegally placed on rights-of-way, or the imposition of stiff fines for violations. Tough enforcement, even if it only reached a few violators, would most likely cause other violators to come into compliance.[8]

[8] Enforcement provisions could be strengthened in numerous ways imaginable to this Court. Besides the noted impoundment and stiff fines, there does not appear to be any reason why the County could not formulate legislation which would place a heavy burden uon the Lessors of the signs to ensure that restrictions were not abused. Further, repeated violations may well give rise to nuisance suits by the County against violators or, perhaps, Lessors of the signs for failure to supervise their Lessees under properly drawn restrictions.

... one does not close the highway simply because one cannot catch all the speeders. Here the County may not close this method of communication simply because it cannot control the violators, unless and until it shows that such action is the less restrictive method of curing the evil.[9]

[9] The County has asserted other safety hazards in relation to the signs. The County points to electrical hazards and the hazards which the signs would present in the event of severe weather, that is to say, the signs could be easily blown over. As to both of these, however, County clearly can enact restrictions to address these problems. Electrical codes for the portable signs could be developed and the County could require the signs to be anchored in a sufficient manner to ensure the stability. Both of these measures are far less drastic than a total ban of the signs.

The total ban of portable signs simply went too far. Their restricted use would still allow individuals wishing to avail themselves of opportunities under the First Amendment, to have a vehicle of expression and at the same time, provide a safer and more aesthetically pleasing environment in Manatee County.

The County was faced with a problem: the control of portable signs. It reacted with a total ban of a freedom guaranteed to the citizens of this country by the First Amendment. Just as the First Amendment would be offended by an ordinance gagging all citizens between certain hours of the day because the municipality had difficulty with boisterous citizens, the First Amendment is offended by this ordinance's gagging certain citizen's ability to speak to others through the messages on portable signs because Manatee County has had difficulty making many of those using portable signs to do so in a reasonable, legal manner. The exercise of a First Amendment freedom, under these circumstances, does not require a total ban; the enforcing authority must *try harder*.

The Court finds that the fourth requirement of the *Central Hudson* test has not been met by the Manatee County ordinance.

In light of the foregoing, a permanent injunction is entered in favor of the Plaintiffs prohibiting the enforcement of Section B3d of Ordinance 81-23, as amended by Ordinance 82-24; the Manatee County Sign Ordinance.

The Clerk is directed to enter a declaratory judgment in favor of the Plaintiffs, declaring the specific section of the Manatee County ordinance to be unconstitutional. Jurisdiction is retained for the enforcement of the executory provisions herein.